IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Nancy C. Moore, )
)
                Plaintiff, )
)
      vs. )
)
Carolyn W. Colvin, Acting )
Commissioner of Social Security, )
)
             Defendant. )
)

Civil Action No. 6:15-2430-BHH-KFM

**REPORT OF MAGISTRATE JUDGE**

      This case is before the court for a report and recommendation pursuant to Local Civ. Rule 73.02(B)(2)(a)(D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

      The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

      The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on January 10, 2012, alleging that she became unable to work on January 1, 2009. The applications were denied initially and on reconsideration by the Social Security Administration. On September 12, 2012, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

Benson Hecker, Ph.D., an impartial vocational expert, appeared on October 10, 2013, considered the case *de novo*, and on February 14, 2014, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended.  The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on May 28, 2015 (Tr. 1-5).  The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

(2)    The claimant has not engaged in substantial gainful activity since January 1, 2009, the alleged onset date (20 C.F.R §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: lumbar degenerative disc disease; degenerative arthritis, bilateral hands; fibromyalgia/polyarthralgia; obesity; bilateral sensorineural hearing loss; depression; anxiety; and borderline intellectual functioning (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).

(5)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work (lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday), as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except with the following limitations:  occasionally climb ladder/rope/scaffolds, balance, kneel, stoop, crouch, and crawl; frequently climb stairs; frequently handle and finger with bilateral upper extremities; have no exposure to a high noise environment; perform simple, repetitive tasks with corresponding instructions; and have occasional public contact.

2

(6)    The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

(7)    The claimant was born on January 19, 1970, and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

(8)    The claimant has a limited education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

(9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2009, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

3

has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

4

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was 38 years old on her alleged disability onset date and 44 years old on the date of the ALJ's decision (Tr. 32-33). The plaintiff completed the ninth grade, attended special education classes, and can read and write (Tr. 45, 50). She has a driver's license and no limitations on driving (Tr. 45). She has past relevant work as a waitress and cashier (Tr. 31-32).

In October and November 2009 and March 2012, the plaintiff's physical examinations were normal with respect to her alleged low back pain (i.e. normal gait, full

5

range of motion and strength, and straight leg raising test within normal limits) (Tr. 386-87, 391, 485).

On November 23, 2009, the plaintiff was seen at North Hills Medical Center. No musculoskeletal abnormalities were noted (Tr. 386).

Between January 2010 and February 2012, rheumatologist Amir Agha, M.D., diagnosed polyarthralgias with negative serologies, noting that the plaintiff's examination was essentially unremarkable except for degenerative changes with no synovitis or radiculopathy (Tr. 427-31, 453-59).

In 2010, the plaintiff was primarily treated by Milena Lombardi, M.D., Victor Campbell, M.D., and Sung Han, M.D., for her chronic back pain and problems with her hands. She described her back pain to Dr. Campbell as excruciating. Dr. Campbell stated she needed bed rest when she had pain like the type she described (Tr. 371). On December 20, 2010, Dr. Campbell noted the plaintiff continued to have chronic pain the right low back area. She also had a very large overgrown metacarpal head of the right index finger, which might indicate an atypical form of rheumatoid disease (Tr. 353).

A January 2010 lumbar spine MRI showed bilateral facet joint arthropathic changes, disc desiccation, with only mild loss of disc height, mild posterolateral disc bulge at L4-5, and mild right and minimal to mild left neural foraminal stenosis (Tr. 371, 379-80).

In January 2010, examinations showed full supple range of motion of the spine with no limitation in the ability to heel walk and toe walk; good strength; full hip range of motion, negative straight leg raising test bilaterally; and nontender sacroiliac joints (Tr. 383, 458-59).

In January and September 2010, the plaintiff reported right metacarpophalangeal ("MCP") joint swelling and intermittent pain, but physical examination showed no synovitis with only mild degenerative joint disease and no clubbing, cyanosis, or edema, and a right hand and left wrist x-ray were normal (Tr. 365, 373-75, 458).

6

In September 2010, the plaintiff sat comfortably, had some tenderness to palpation over her lumbosacral spine, had pain with extension, but could heel and toe stand, had negative straight leg raise bilaterally, normal sensory exam, and negative Patrick's maneuver bilaterally; she was diagnosed with lumbar spondylosis with mechanical back pain (Tr. 596).

In November 2010, the plaintiff sat comfortably, had some pain with extension and tenderness to palpation in the right lumbosacral spine, but could heel and toe stand (Tr. 595).

In December 2010, the plaintiff had "very good" movement in her spine, could lean forward fully, was noted to have a "very supple" spine, could lean backward fully, and had full range of motion except for bending to the left (Tr. 353).

On February 24, 2012, consultative examiner Robin Moody, Ph.D., observed that the plaintiff's mental status examination was normal apart from nervous affect and mood and mildly impaired concentration with mild distraction; her persistence and pace were adequate; and she could carry out simple instructions and manage her own funds (Tr. 462-66).

At the March 16, 2012, consultative examination with state agency physician Stuart Barnes, M.D., the physical examination was grossly normal, with the exception of a right paralumbar area that was painful, though Dr. Barnes could not elicit any discomfort in the paraspinal area along the spine or sacroiliac joint. Dr. Barnes also observed that the plaintiff's mood and affect seemed normal, she was very talkative, and her concentration and comprehension appeared normal. Dr. Barnes noted that although the plaintiff had some swelling in the first and second MP joints on both hands and mild swelling of the proximal interphalangeal ("PIP") joints bilaterally, she had full range of motion of all digits in both hands and normal range of motion of both thumbs, and one ganglion cyst on her right wrist, which appeared benign as it was not painful. Dr. Barnes' assessment was

7

chronic back pain; degenerative arthritis, both hands; mild bilateral hearing loss with bilateral hearing aids; and depression.  He opined that the plaintiff "may very well have a trigger point in her low back region that could respond to point injection" (Tr. 472-75).

On March 19, 2012, an examination by Amanda Brooks, P.A., at NHMC Mauldin showed no joint or bone abnormalities, no muscle weakness, or scoliosis.  Her mood and affect were normal (Tr. 485).

An April 2012 lumbar spine x-ray showed L6 vertebral bodies transitional with sacralized right tarsals and narrowing at L6-S1 (Tr. 483).

At her yearly gynecological examination on June 27, 2012, the plaintiff reported exercising three to four times per week using a home machine stepper (Tr. 478). The plaintiff reported anxiety about her exam but was smiling as she did so; a mental status examination was normal, as she was able to articulate well with normal speech/language, rate, volume, and coherence, and her mood and affect were normal (Tr. 478-80).

In July 2012, reviewing state agency physician, E. Russell March, Jr., M.D., opined that the plaintiff could perform light work with postural and communicative limitations (Tr. 149-50). Also in July 2012, reviewing state physician Harold R. Veits, M.D., performed a mental residual functional capacity ("RFC") assessment and opined that the plaintiff did not meet a listed impairment and could perform light work involving simple instructions and limited contact with the public (Tr. 146-47, 150-51).

A September 2012 lumbar spine MRI revealed mild degenerative changes (Tr. 528).  A physical examination on September 25, 2012, was normal except for tenderness over the right sacroiliac ("SI") joint and some spasm of the paraspinal muscles (without pain).  The plaintiff was noted to have a regular gait.  The examination showed left wrist tenderness over cyst and decreased grip with negative Tinel's sign (Tr. 526).

In October 2012, Dr. Agha noted that the plaintiff's MRI revealed mild degenerative disc disease at L4-5, L5-6, and L6-S1 (Tr. 510).

On December 12, 2012, Geera Desai, M.D., who has been the plaintiff's primary treatment provider for psychological issues, opined that the plaintiff has a major depressive disorder, recurrent type, generalized anxiety disorder – moderate to severe. She is highly vigilant – anxious. She is unable to carry out very short and simple instructions. She is unable to sustain an ordinary routine without special supervision, and she is unable to ask simple questions or request assistance. She is unable to deal with normal work stress. She is so anxious and stays so preoccupied she cannot stay focused. She gets easily distracted and highly agitated. She has marked difficulties in maintaining social functioning. She has marked difficulties in maintaining concentration, persistence or pace. She has had more than three episodes of decompensation within a twelve month period, each of at least two weeks duration. She has an anxiety related disorder and a complete inability to function independently outside the area of her home. Dr. Desai further opined that these impairments have lasted or can be expected to last at least 12 months, and the plaintiff's chronic pain, depression, and anxiety are major limiting factors (Tr. 494-99).

On August 15, 2013, the plaintiff appeared anxious and somatized a lot; mental health records also show situational stressors such as both parents dying in the same month and parenting issues with her children; though she was encouraged several times to see a counselor and refused. Dr. Desai noted that the plaintiff continued to have depression despite her medications (Tr. 598-606).

On August 29, 2013, the plaintiff was seen by Robert Brabham, Ph.D., for a psychological and vocational evaluation, upon referral by her attorney. The plaintiff was oriented to all spheres. She did not demonstrate or report any hallucinations or delusional thought process and denied any suicidal attempts or plans. The plaintiff drove herself to this examination. Dr. Brabham noted that the plaintiff had developed and continues to experience a number of psychiatric symptoms including depression and anxiety as a result

9

of her significant medical conditions that include disorders of the back (bilateral facet arthritis and minimal foraminal disk protrusion on the left and minimal foraminal stenosis, mild left L5-S1, sciatica, degenerative disc disease in the lumbar spine, L4-L5 bulging disc, mild DJD of L4-5, L5-6, L6-S1, bilateral hearing loss, bilateral knee, bilateral hands, migraine headaches, and insomnia. Dr. Brabham noted that during the evaluation that several times the plaintiff had major episodes in which she "jerked" while seated in a chair. "There is no way in my opinion that she was in any way feigning or faking those episodes, but they are consistent with her report of severe muscle spasms." The plaintiff described horrible pain during these episodes. Dr. Brabham noted that the plaintiff must spend about five hours a day in bed on her right side with her back supported of as a result of her pain and depression. Dr. Brabham also noted the plaintiff had difficulty concentrating and sustaining attention to complete nearly any tasks. Dr. Brabham noted the plaintiff's depressive symptoms include a considerable loss of interest or pleasure, which is nearly always present, social withdrawal even from family activities, decreased energy, tiredness and fatigue, impaired ability to concentrate, and is easily distracted with memory difficulties. Dr. Brabham opined that the plaintiff "clearly meets" the requirements of Listing 12.04 (Affective Disorders) (Tr. 329-47).

Dr. Agha opined on September 4, 2013, that the plaintiff is unable to perform any full time work even at a sedentary level. He further stated that she suffers from fibromyalgia, which would cause distraction or abandonment by the patient in a job setting and impair her ability to perform daily activities and work. Her impairments are likely to increase with physical activity. and she would require frequent rest periods. The plaintiff's restrictions are most probably permanent or expected to last more than 12 months. Dr. Agha also opined that the plaintiff's pain is distracting and that side effects of the medications can be expected to be severe and to limit effectiveness due to distraction, inattentiveness, drowsiness, etc. The medical treatment provided has had no appreciable

10

impact or have only briefly altered the level of pain that the plaintiff experiences (Tr. 607-08).

In accordance with Vicki Bolt of the Bolt Hearing Center, the plaintiff has moderate to severe hearing loss. As such, she wears hearing aids in both ears in order to hear emergency vehicles while driving and to understand speech (Tr. 554).

At the administrative hearing, the plaintiff testified that she attended special education classes in school and had a learning disability (Tr. 50). She testified that her primary physical problem is arthritis concentrating in her lower right back. She states that she can comfortably sit for twenty to thirty minutes at a time. She can walk about fifteen minutes at a time before having to stop and rest. When she rests, she must rest for five to ten minutes (Tr. 46). The plaintiff also complains of arthritis in her knees, her joints, and hands and feet. She testified she has a cyst in her left hand that causes pain and makes it difficult to pick up and pour a pitcher of tea (Tr. 48). The plaintiff is right handed and has arthritis problems with the joints of that hand. She says that an arthritic knot on her right hand has caused her pain since at least the time of her onset of disability (Tr. 50-51).

The plaintiff sometimes has migraine headaches and nosebleeds. She estimated that it had been about five months since she had one as of the date of the hearing. The plaintiff suffers from anxiety and depression (Tr. 47-48). She has had these issues since she was a young girl as a result of sexual abuse by her stepfather (Tr. 51, 555-92). Her depression makes her sad so that she begins crying and does not want to be around anyone (Tr. 48-49, 53). Her depression makes it difficult for her to have a relationship with a boyfriend (Tr. 53-54). Her anxiety makes her want to take a deep breath, but she is unable to do so and she sometimes has panic attacks (Tr. 49). She feels like her mind is racing and she cannot do anything. She has these symptoms every day (Tr. 53). In September 2013, she was involuntarily hospitalized because she threatened to harm

herself ( Tr. 58). She has received medication for these psychological issues since 2008 (Tr. 52).

The plaintiff testified she spends her day by first getting her children ready for school. At that point, she goes back to bed because of the pain in her back. She spends a significant portion of her day reading either by sitting or lying in bed. She often lays down for about two hours per day (Tr. 47) When she gets up she is able to stay up about an hour at a time. She has pain every day (Tr. 54-55). The plaintiff's sons help her with the chores around the house, including cleaning, dishes, and laundry. She does what she can until the pain requires her to sit down to rest (Tr. 47). Her pain, psychological problems, and learning disabilities make it difficult for her to follow instructions and be around people. She also has hearing loss in both ears that require her to use hearing aids (Tr. 54-55).

The vocational expert testified that a hypothetical individual of the plaintiff's age, education, and work experience, and the RFC to perform light work while occasionally balancing, kneeling, stooping, crouching, crawling, and climbing ladders/ropes/scaffolds; frequently climbing stairs; frequently handling and fingering with bilateral upper extremities; having no exposure to a high noise environment; performing only simple, repetitive tasks with corresponding instructions; and having only occasional public contact could perform other work that existed in significant numbers in the national economy, including the representative light jobs of packer, assembler, and night cleaner (Tr. 60). The vocational expert also testified that if the individual could not focus or remain on task for two hours at a time or would require more breaks than fifteen minutes in the morning, thirty minutes at lunch, and fifteen minutes in the afternoon, there would be no jobs available. He additionally testified that there would be no work available if the individual could not consistently work eight hours per day, five days a week or would miss three or more days of work per month (Tr. 61).

## ANALYSIS

The plaintiff argues that the ALJ erred by (1) failing to properly evaluate the opinions of her treating physicians; (2) failing to properly evaluate the opinion of Dr. Brabham; (3) mischaracterizing and misstating the record; and (4) failing to make a proper credibility finding.

### *Opinion Evidence*

The plaintiff first argues that the ALJ erred in discounting the opinions of psychiatrist Dr. Desai, rheumatologist Dr. Agha, and consultative examiner Dr. Brabham, while giving greater weight to the opinions of the state agency reviewing physicians (pl. brief at 8-12). The regulations require that all medical opinions in a case be considered, 20 C.F.R. §§ 404.1527(b), 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with which the physician supports his opinion; (5) the consistency of the opinion; and (6) whether the physician is a specialist in the area in which he is rendering an opinion. *Id.* §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled" or "unable to work" or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in SSR 96-2p:

> [A] finding that a treating source medical opinion is not
> well-supported by medically acceptable clinical and laboratory
> diagnostic techniques or is inconsistent with the other
> substantial evidence in the case record means only that the
> opinion is not entitled to "controlling weight," not that the
> opinion should be rejected. Treating source medical opinions
> are still entitled to deference and must be weighed using all of
> the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. In
> many cases, a treating source's medical opinion will be entitled
> to the greatest weight and should be adopted, even if it does
> not meet the test for controlling weight.

*Id.* at *4.

### Dr. Desai

As set forth above in greater detail, on December 12, 2012, psychiatrist Dr.
Desai opined that the plaintiff has a major depressive disorder, recurrent type, generalized
anxiety disorder – moderate to severe. Dr. Desai stated the plaintiff was unable to carry out
very short and simple instructions, unable to sustain an ordinary routine without special
supervision, and unable to ask simple questions or request assistance. Dr. Desai further
opined that the plaintiff was unable to deal with normal work stress, had marked difficulties
in maintaining social functioning, marked difficulties in maintaining concentration,
persistence or pace, and more than three episodes of decompensation within a twelve
month period, each of at least two weeks duration. Dr. Desai stated the plaintiff had an
anxiety related disorder and a complete inability to function independently outside of her
home (Tr. 494-99). On August 15, 2013, Dr. Desai opined that the plaintiff had not
improved much, was highly anxious, and her "arthritis chronic back pain and anxiety with
depression limits her from any kind of employability" (Tr. 598-99).

The ALJ considered Dr. Desai's opinion and gave it little weight (Tr. 28). In
doing so, the ALJ properly considered the factors in the regulations as set forth above. *See*
20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5). Specifically, the ALJ noted that Dr.
Desai was a specialist in psychiatry and treated the plaintiff from October 2010 until the

time of the hearing.  However, the ALJ found that the opinion that the plaintiff was seriously limited or unable to perform many mental work tasks or function outside of her home was not supported by the medical evidence of record, which, as fully discussed above, shows some anxiety and decreased concentration, but no other, more significant, symptoms or limitations during mental status examinations (Tr. 29).  The plaintiff was regularly noted to have normal mood and affect or only mild symptoms (Tr. 29; *see* Tr., 343, 463-64, 473, 479, 485, 598-606).  As the ALJ further noted, the plaintiff never received any mental health counseling, despite recommendations that she do so (Tr. 29; *see* Tr. 598-606).  The ALJ further noted that Dr. Desai's opinion was inconsistent with the plaintiff's testimony at the hearing regarding her daily activities, which included driving, getting her children ready for school, reading, and cooking (Tr. 17, 29; *see* Tr. 45-47).  The ALJ further noted that the medical record prior to the hearing showed that the plaintiff's admitted daily activities included exercising, taking her children to school, doing laundry, cleaning the house, helping her children with homework, cooking, driving, shopping in stores, and taking care of her dogs.  She could also pay bills, count change, and handle a savings account (Tr. 17, 29; *see* Tr. 262-66, 463, 473).

The plaintiff argues that Dr. Desai's opinion was "confirmed and supported" by the examination by Dr. Moody because Dr. Moody diagnosed the plaintiff with major depressive disorder – recurrent and moderate; general anxiety disorder; sexual abuse as a child victim, and post traumatic stress disorder – chronic and moderate (pl. brief 8 (citing Tr. 465)).  However, as argued by the Commissioner, a mere diagnosis is insufficient to demonstrate functional limitations.  *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[A] psychological disorder is not necessarily disabling.  There must be a showing of related functional loss.") (citation omitted).  With regard to the plaintiff's functional limitations due to her psychological impairments, the ALJ gave great weight to Dr. Moody's

15

opinion because she found it was supported by Dr. Moody's examination of the plaintiff as well as the record as a whole, as will be more fully discussed below (Tr. 31).

Furthermore, the ALJ noted that Dr. Desai opined that the plaintiff had more than three episodes of decompensation within a 12 month period, each of at least two weeks duration; however, the record contained absolutely no evidence of any such episode, which further detracted from the reliability of Dr. Desai's opinion (Tr. 29; *see* Tr. 498). The ALJ also noted that Dr. Desai "basically opined that the [plaintiff's] alleged anxiety meets Listing 12.04 [Affective Disorders]" (Tr. 29). However, the ALJ found that the medical record did not support such a finding in light of the extensive listing analysis at step three of the sequential evaluation (Tr. 17-20, 29). Specifically, the ALJ found that the plaintiff had only mild restriction in her activities of daily living, which is well supported given the evidence recounted above (Tr. 17-18). The ALJ further found that the plaintiff had moderate difficulties in social functioning, which was supported by evidence showing the plaintiff shopped in stores, talked on the telephone to a friend, and had essentially normal mental status exams except for some anxiety (Tr. 18-19). With regard to concentration, persistence, or pace, the ALJ found the plaintiff had moderate difficulties, noting the plaintiff could pay bills, had a savings account, could count change, showed mild impairment in concentration in Dr. Moody's examination, showed normal comprehension and concentration upon examination by Dr. Barnes, and provided responsive answers to questions in the hearing (Tr. 19). Lastly, the ALJ found the plaintiff had no episodes of decompensation (Tr. 19-20). Accordingly, the plaintiff did not meet the paragraph B criteria of Listings 12.02, 12.04, 12.06 (Tr. 17). The ALJ also considered the paragraph C criteria of Listings 12.04 and 12.06, noting the record did not support the presence of the required criteria (Tr. 20). The ALJ's listing analysis and her analysis of Dr. Desai's opinion are supported by substantial evidence and are without legal error.

### *Dr. Agha*

Treating rheumatologist Dr. Agha opined on September 4, 2013, that the plaintiff was unable to perform any full time work even at a sedentary level. He further stated that her pain was distracting and that side effects of the medications could be expected to be severe and to limit effectiveness due to distraction, inattentiveness, drowsiness, etc. He stated that the medical treatment provided has had no appreciable impact or have only briefly altered the level of pain that the plaintiff experiences (Tr. 607-08).

The ALJ evaluated the opinion of Dr. Agha, finding it was entitled to little weight (Tr. 30). The ALJ noted that Dr. Agha is a specialist and had treated the plaintiff since January 2010 on a regular basis. However, the ALJ found that Dr. Agha's opinion was not supported by his own treatment notes and the record as a whole. The ALJ noted that the record showed essentially unremarkable examinations apart from degenerative changes and only mild limitations (i.e. generally normal gait, full range of motion and strength, and straight leg raising test within normal limits) (Tr. 30; *see* Tr. 353, 371, 379-80, 383, 386-87, 391, 427, 458-59, 473-75, 478, 485, 526, 595-96). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (stating that the "more consistent an opinion is with the record as a whole, the more weight" it will be given). Furthermore, as to Dr. Agha's opinion that the side effects of the plaintiff's medications could be expected to be severe, the ALJ noted in the RFC finding that "[o]verall, the [plaintiff] did consistently report medication side effects to treatment providers" (Tr. 27). Moreover, Dr. Agha's statement that the plaintiff was unable to perform any full time work, even at a sedentary level, is not a medical opinion but is rather an administrative finding reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The plaintiff argues that Dr. Agha's opinions are

17

> confirmed and supported by the examination of Dr. . . . Barnes who assessed her with chronic back pain, degenerative arthritis in both hands[s], mild bilateral hearing loss with hearing aids, and depression (Tr. 474).  Admittedly, Dr. Barnes' conclusions are of medical conditions that are not as severe as those described by Dr. Agha.  However, Dr. Barnes' opinions and observations in no way discount those of Dr. Agha.

(Pl. brief at 8).  The plaintiff is correct that both Dr. Agha and Dr. Barnes acknowledged the plaintiff's chronic back pain, arthritis, hearing loss, and depression, and the ALJ found that all of these conditions, in addition to others, were severe impairments (Tr. 14).  As noted above, however, a mere diagnosis is insufficient to demonstrate functional limitations. *See Gross*, 785 F.2d at 1166.  Here, the ALJ found that the degree of limitation opined to by Dr. Agha was not supported by the record, and the undersigned finds that substantial evidence supports that finding.  With regard to Dr. Barnes, the ALJ found that he performed the only comprehensive medical evaluation of the plaintiff in the record, he is a specialist in the area of the plaintiff's impairments, and his opinion was supported by the medical evidence of record.  Accordingly, the ALJ gave Dr. Barnes' opinion great weight, and Dr. Barnes' physical findings support the RFC assessment by the ALJ.

### Dr. Brabham

On August 29, 2013, Dr. Brabham performed a psychological and vocational evaluation of the plaintiff.  He opined that the plaintiff "clearly meets" the requirements of Listing 12.04 (Affective Disorders) due to multiple marked mental limitations and that she was mentally and physically "unable to perform any substantial gainful work activity" (Tr. 329-47).  The ALJ gave the opinion little weight (Tr. 30-31).  Specifically, the ALJ found that Dr. Brabham's opinion that the plaintiff met Listing 12.04 was not supported by the evidence as the ALJ had discussed in the listing analysis of the paragraph "B" criteria described above (Tr. 31).  Furthermore, the ALJ found that the opinion was not consistent with the medical evidence, which as fully detailed above, showed some anxiety and decreased

18

concentration, but a lack of mental health counseling and generally normal mental status examinations (Tr. 31; *see* Tr. 343, 463-64, 473, 479, 485, 598-606), as well as generally mild physical limitations (Tr. 31; *see* Tr. 353, 371, 379-80, 383, 386-87, 391, 427, 458-59, 473-75, 478, 485, 526, 595-96). The ALJ also noted that Dr. Brabham's opinion was not consistent with the plaintiff's daily activities as she described them prior to the hearing. While at the hearing the plaintiff described somewhat more limited daily activities, prior to the hearing, the plaintiff described daily activities that were not limited to the extent one would expect given the complaints of disabling symptoms and limitations, as set forth above (Tr. 31).

The ALJ gave great weight to the opinion of Dr. Moody, who performed a consultative psychological examination of the plaintiff in February 2012, finding that the plaintiff's mental status examination was normal apart from nervous affect and mood and mildly impaired concentration with mild distraction; her persistence and pace were adequate; and she could carry out simple instructions and manage her own funds (Tr. 462-66). The ALJ determined that Dr. Moody's evaluation of the plaintiff's psychological limitations was more comprehensive than that of Dr. Brabham, noting that Dr. Brabham's evaluation was lengthy, but his notations regarding the mental exam and IQ testing were lacking. Furthermore, Dr. Moody's evaluation was supported by the mental status examination he performed on the plaintiff and was not inconsistent with the remainder of the evidence, including the objective findings of treating sources (Tr. 31).

Based upon the foregoing, the undesigned finds no error in the ALJ's consideration of Dr. Brabham's opinion.

### *State Agency Physicians*

In making the RFC finding, the ALJ gave great weight to the opinions of the state agency physicians that the plaintiff's functional limitations did not preclude her ability to perform a reduced range of light work involving only simple, repetitive tasks and

occasional contact with the public (Tr. 20, 28). The ALJ found that these opinions were well supported by the record and were not inconsistent with the other substantial evidence of record (Tr. 28). The ALJ was required to consider the state agency physician assessments as opinion evidence. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants . . . as opinion evidence, except for the ultimate determination about whether you are disabled."). *See* SSR 96-6p, 1996 WL 374180, at *3 ("In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir.1984) ("[T]he testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record. . . . [W]e have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record.") (citations omitted).

The plaintiff argues that because the state agency physicians' opinions were rendered before the record was complete in this case, it was error for the ALJ to rely on them (pl. brief at 9; *see* Tr. 146-51). Specifically, the plaintiff notes that the opinions of Drs. Desai and Agha and a note from the Bolt Hearing Center were made part of the record after the state agency physicians gave their opinions (pl. brief at 9). With regard to the plaintiff's hearing loss (Tr. 554), the state agency reviewing physician specifically noted in his RFC finding that the plaintiff had communicative limitations due to her "moderate sensorineural hearing loss bilaterally" and bilateral hearing aids (Tr. 150). Further, an ALJ may rely on a medical source opinion that did not have access to the entire medical record, so long as the ALJ considered the entire evidentiary record and substantial evidence supports the

20

ALJ's decision. *Thacker v. Astrue*, No. 11-246, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011), *adopted by* 2012 WL 380052 (W.D.N.C. Feb. 6, 2012).  Here, the ALJ appropriately considered the entire record and appropriately evaluated the opinions of Drs. Desai and Agha, as discussed above.  Moreover, the RFC finding is supported by substantial evidence.  Accordingly, the undersigned finds no error.

Based upon the foregoing, the ALJ's evaluation of the opinion evidence is based upon substantial evidence and without legal error.

At the conclusion of the argument regarding the opinion evidence, the plaintiff argues as follows:

> The ALJ failed to consider the continuous and consistent reports of pain and psychological overlay that necessarily limited her activities and prevented her from being able to work. Instead, the ALJ only considered selected portions of the medical record and did not consider the record as a whole which supports the awarding of disability.
>
> The medical record as a whole as well as the testimony of Ms. Moore shows that there is no dispute that she suffers from chronic pain and anxiety and depression that prevent her from performing any type of work – even at the sedentary level.
>
> As such, **the decision failed to consider the combined effects of all her impairments** -- physical, mental, and pain. As such the Defendant's decision is not supported by substantial evidence which a reasoning mind would accept as sufficient to support a particular conclusion.

(Pl. brief at 10 (emphasis in original)).

Other than the conclusory statement that the Commissioner's failed to consider the plaintiff's impairments in combination, the plaintiff does not develop the argument.  To the extent the plaintiff adequately raised such an issue, the undersigned finds no error.  When, as here, a claimant has more than one impairment, the ALJ must consider the severe and nonsevere impairments in combination in determining whether the plaintiff is disabled. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (holding that disability

21

may result from a number of impairments which, taken separately, might not be disabling, but whose combined effect, taken together, is sufficient to render a claimant unable to engage in substantial activity).  At step three of the sequential evaluation process, the ALJ found that the plaintiff "did not have an impairment or combination of impairments" that met or medically equaled any listed impairment (Tr. 15).  In the RFC assessment, the ALJ specifically stated that she considered all of the plaintiff's symptoms (Tr. 15, 20).  The ALJ did consider the plaintiff's "chronic pain and anxiety and depression" (pl. brief at 10) in assessing the plaintiff's RFC (Tr. 20-31).  Specifically, the ALJ limited the plaintiff to light work with postural limitations based, in part, on her complaints of chronic pain (Tr. 20-25) and further limited the plaintiff to work that involved simple, repetitive tasks with corresponding instructions and occasional public contact based upon her borderline intellectual functioning, anxiety, and depression (Tr. 26-27).  Moreover, The ALJ discussed the plaintiff's impairments and their cumulative effects in setting the limitations included in the RFC assessment (Tr. 20-31).  The plaintiff has failed to identify any limitations supported by the record for which the ALJ did not account in the RFC assessment.  Based upon the foregoing, the decision as a whole indicates that the ALJ performed an adequate combined effect analysis of the plaintiff's multiple impairments.

### *Mischaracterization of the Record*

The plaintiff argues generally that the ALJ "has selectively chosen portions of the record to deny . . . her disability benefits.  She has pointed to selected evidence that seem to support her position of denying benefits while improperly discounting a significant portion of evidence that supports the position of granting benefits" (pl. brief at 13-14).  In making this argument, the plaintiff contends that the plaintiff's mental impairments meet Listing 12.04 (*id.* at 13).  However, as discussed above, the plaintiff's listing analysis is without error and is based upon substantial evidence.  The plaintiff further argues that she "is limited to less than a full range of sedentary work" (*id.*).  As set forth above, the

22

undersigned finds that the ALJ's RFC analysis is based upon substantial evidence and is without legal error. The plaintiff then argues that "it is reversible error if the decision does not include specific and detailed supported findings and reasoning and a full assessment of the claim so that the District Court has an adequate record for proper review" (*id.*). Here, the ALJ has provided a detailed and reasoned analysis of the plaintiff's claim in accordance with the law cited herein (Tr. 12-33). The plaintiff has failed to show that the ALJ "mischaracterized and misstated the record," and this allegation of error is without merit.

### Credibility

The plaintiff next argues that the ALJ failed to properly evaluate her credibility (pl. brief at 14-15). The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996) (citations and internal quotation marks omitted) (emphasis in original). In *Hines v. Barnhart*, a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d 559, 565 (4th Cir. 2006). However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or

23

sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p, 1990 WL 300812).

> The court further acknowledged:

> > While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n.3 (quoting *Craig*, 76 F.3d at 595). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled.  However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's

credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)    the individual's daily activities;

(2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)    factors that precipitate and aggravate the symptoms;

(4)    the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)    treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6)    any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7)    any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

After identifying the appropriate standard for assessing a claimant's credibility, the ALJ found that while the plaintiff's impairments could be expected to cause some of her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible (Tr. 21-22). The ALJ first noted that the objective medical evidence did not support the extent of the symptoms alleged by the

25

plaintiff (Tr. 20-27). However, the ALJ did not reject the plaintiff's allegations solely on this basis; rather, it was just one factor the ALJ considered. *See Hines*, 453 F.3d at 565 n. 3; *Johnson*, 434 F.3d at 658; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 96-7p, 1996 WL 374186, at *6. The ALJ specifically discussed the relevant factors set forth above for consideration in assessing the credibility of a claimant's statements (Tr. 27-28). The ALJ noted the plaintiff's extensive activities of daily living as described herein (Tr. 27; *see* Tr. 17-18); the plaintiff's symptoms were stable on medication (Tr. 27); the plaintiff did not consistently report medication side effects (Tr. 27); treatment notes showed physical therapy helped the plaintiff's pain (Tr. 28), and the plaintiff used hearing aids (Tr. 28). As the ALJ appropriately assessed the plaintiff's credibility and the findings are based upon substantial evidence, the undersigned finds no error in this regard.

## CONCLUSION AND RECOMMENDATION

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

July 8, 2016
Greenville, South Carolina